IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP and MICHELE LONG,** | : | **No. 1:09-CV-602** |
| | : | |
| **Plaintiffs** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| | : | |
| **JAMES HOLTRY, individually** | : | |
| **and in his official capacity, SUE** | : | |
| **MAULFAIR, individually and in** | : | |
| **her official capacity, ROBERT** | : | |
| **SUTHERLY, individually and** | : | |
| **in his official capacity, LEBANON** | : | |
| **COUNTY,** | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Before the court is Defendants' motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 10.) The parties have briefed the issues, and the matter is ripe for disposition.

## I. Background

### A. Facts[1]

For a period of over twenty years, Plaintiffs Philip and Michele Long operated their home as a foster home licensed by Lebanon County Children & Youth Services, ("LCCYS"), which is controlled by Defendant Lebanon County. At all times relevant to this case, Defendant James Holtry ("Holtry") was the executive

---

[1] For the purposes of this motion to dismiss, all factual allegations made by Plaintiffs have been taken as true and have been construed in the light most favorable to Plaintiffs.

director of LCCYS.  Defendant Sue Maulfair ("Maulfair") was a caseworker, and Defendant Robert Sutherly ("Sutherly") was a supervisor at LCCYS.

During the time that Plaintiffs operated a foster home, approximately fifteen to twenty foster children stayed at their home.  Beginning in 2006, two children where placed by LCCYS in Plaintiffs' home.  Plaintiffs aver that upon their arrival at Plaintiffs' home, the children had emotional problems and certain developmental delays which began to abate while in Plaintiffs' care; however, these conditions worsened after the children visited their natural parents.  Plaintiffs assert that they reported these problems to LCCYS.  The children remained in Plaintiffs' home through January 2008.

In early January 2008, Plaintiff Michelle Long notified Maulfair that she would be unable to take the children to a regularly scheduled visit with their biological parents scheduled for January 15, 2008.  On January 7, 2008, Michelle Long was told that she had to take the children for a visit with their natural parents; however, due to the short notice, she was unable to rearrange her schedule.  On January 24, 2008, at approximately 4:15p.m., Plaintiffs received a telephone call from Maulfair requesting that Plaintiffs have the foster children packed up and ready to leave the foster home the following morning.  Plaintiffs were only told that the children were being removed from their care, they were not told why they were being removed.  Plaintiffs complied with the request despite receiving only one day's notice.  Defendants did not inform Plaintiffs of their right to appeal LCCYS' decision to remove the children.

On February 5, 2008, Sutherly sent Plaintiffs a letter informing them that LCCYS would be closing their foster family status, and would not be placing

any other foster children with Plaintiffs. The letter did not explain the reasons for LCCYS' decision, except that the agency felt it was in the best interest of all parties involved.

On March 10, 2008, LCCYS filed a petition for a change of placement of the foster children with the Court of Common Pleas of Lebanon County, Pennsylvania. Plaintiffs were not a party to this proceeding. On March 11, 2008, the court entered an order directing that the foster children be removed from Plaintiffs' foster home. On March 21, 2008, LCCYS filed a motion for an amended order requesting that the court enter a directive that Plaintiffs' home be closed for *future* placement of dependent children until LCCYS determines that reopening would be appropriate. Plaintiffs did not receive notice of the motion to amend, and consequently, were not given an opportunity to be heard by the court of common pleas regarding the closing of the foster home. On March 24, 2008, the court of common pleas amended its order and terminated Plaintiffs' foster home privileges for the future placement of foster children.

After entry of the order, Plaintiffs requested LCCYS to reinstate them as a foster home. On April 9, 2008, Holtry sent Plaintiffs a letter stating that there was no specific regulation for appealing a closure of a foster home, and that their request was denied. Before getting Holtry's April 9, 2008 order, on April 2, 2008, Plaintiffs appealed the closure of their foster home to the Department of Public Welfare Bureau of Hearings and Appeals ("BHA"). LCCYS filed a motion to dismiss the appeal alleging that the BHA lacked authority to rule on a order entered by a court of common pleas. On June 12, 2008, the BHA denied the motion to dismiss, and determined that the order issued by the court of common pleas

regarding Plaintiffs continuing as a foster home was not binding on the BHA. The case was then presented to an administrative law judge ("ALJ") who determined that the amended order of the court of common pleas regarding the termination of Plaintiffs' foster home status was unenforceable, and that Plaintiffs' foster home should be reopened. On August 20, 2008, the BHA issued an order affirming the ALJ's decision. LCCYS appealed the BHA's decision to the Secretary for the Department of Public Welfare. On October 22, 2008, the Secretary for the Department of Public Welfare issued a final order upholding the BHA's ruling. That order was not appealed by LCCYS.

Despite the orders by DPW, Defendants have not reopened Plaintiffs' foster home. Plaintiffs aver that their home has not been reopened because of Defendant Holtry's personal animus towards Plaintiff Michelle Long, and that this animus has resulted in an informal policy by LCCYS to never reopen Plaintiffs' home. In support of their allegation, Plaintiffs point to Holtry's conduct in connection with the Foster Parent Association ("Association"). At the time of removal of the children from Plaintiffs' home, Michelle Long was serving as vice-president of the Association. On or around an April 2008 Association meeting, Holtry informed the Association that LCCYS removed the children from Plaintiffs' home. Plaintiffs contend that these actions caused rumors to spread that Plaintiffs had abused the children, something that is entirely false. Plaintiffs also contend that Holtry used his position as the executive director of LCCYS to cause Plaintiffs to be removed from a mailing list for foster parents, and that his actions caused Michelle Long to be removed as vice president of the Association.

Holtry has told Plaintiffs that if they wish to have their foster home reopened they must meet heightened requirements, but has not informed Plaintiffs what the heightened requirements are, thereby making it impossible for Plaintiffs to comply. Plaintiffs also allege that LCCYS has not required any other foster family to meet any heightened requirements.

### A.     **Procedural History**

On April 2, 2009, Plaintiffs filed their complaint alleging that Defendants are liable under 42 U.S.C. §1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and their corollaries under the Pennsylvania Constitution. (Doc. 1.) On June 19, 2009, Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Plaintiffs filed an amended complaint on July 6, 2009. (Doc. 8.) On July 16, 2009, Defendants filed a motion to dismiss the amended complaint, (Doc. 10), and their corresponding brief in support, (Doc. 11). On August 3, 2009, Plaintiffs filed their brief in opposition to Defendants' motion (Doc. 13), and on August 17, 2009, Defendants filed their reply brief, (Doc. 14). After a case management conference with the parties, Plaintiffs filed a motion requesting permission to file a sur-reply. (Doc. 23.) After briefing, the court granted Plaintiffs' request and also permitted Defendants the opportunity to file a sur-rebuttal brief. The parties filed their respective supplemental briefs on November 13, 2009, and November 16, 2009. (Docs. 26, 27.) The matter is now ripe for disposition.

## II.        <u>Legal Standard</u>

When presented with a motion to dismiss for failure to state a claim, the court is required to conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, "the factual and legal elements of the claim should be separated," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v.*

*McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.** **Discussion**

Plaintiffs bring all of their claims pursuant to 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2002). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

In the instant case, there is no dispute that Defendants were acting under the color of state law. Consequently, the court turns to the question of whether Plaintiffs have alleged sufficient facts plausibly demonstrating that they had rights protected by the Constitution and the laws of the United States that were violated by the Defendants. In their amended complaint, Plaintiffs assert that Defendants violated their Fourteenth Amendment rights to substantive and procedural due process and equal protection, as well as their rights under the Fourth

Amendment and Pennsylvania's Constitution.[2]  Plaintiffs also allege that Defendants violated the Dragonetti Act and committed the tort of abuse of process.  The court will address each of Plaintiffs' claims in turn.

## A.  Due Process

Here, Plaintiffs assert that they have both substantive and procedural due process rights in the liberty interests created by state law in 55 Pa. Code § 3700.73 which sets out the procedures required before a Foster Family Care Agency ("FFCA") can remove foster children from the care of foster parents.  Defendants contend that § 3700.73 does not create a constitutionally recognized liberty interest. The court will address Plaintiffs' s procedural and substantive due process claims separately.

### 1.  Procedural Due Process

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  To determine whether due process protection is applicable, the court must first consider whether the asserted interest is protected by the Fourteenth Amendment's protection of life, liberty, or property.  "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'" *Miller v. Clinton County*, 544 F.3d 542, 551 (3d Cir. 2008) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)(alterations in original).  The Supreme Court in

---

[2]In their motion for leave to file a sur-reply, (Doc. 23), Plaintiffs indicated that they wished to withdraw their Fifth Amendment claims in their entirety.  The court deemed these claims withdrawn in its November 6, 2009 order granting Plaintiffs' leave to file a sur-reply.  (Doc. 25).  Accordingly, the court will not address Plaintiffs claims under the Fifth Amendment any further.

*Wilkinson v. Austin,* addressed the two ways in which a protected liberty interest could arise: (1) "from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or (2) "from an expectation or interest created by state laws or policies." 545 U.S. 209, 221 (2005). In the case at bar, Plaintiffs assert that their expectation of a liberty interest is a creation of state law.

Pursuant to 55 Pa. Code § 3700.73(b), an FFCA must "inform foster parents in writing that they may appeal the relocation of a child in accordance with subsection (a) at least 15 days prior to the relocation of the child." Moreover, "[i]f a foster parent submits an appeal . . . and the foster parent has the right to appeal . . . the child shall remain in the foster family home pending a decision on the appeal." 55 Pa. Code. § 3700.73(e). The parties disagree about the significance of these protections. Plaintiffs argue that they give rise to a constitutionally protected liberty interest. Defendants, on the other hand, argue that a state regulation does not create a constitutionally required due process right.

It is difficult for the court to see how the procedures outlined in 55 Pa. Code § 3700.73 do not set forth an expectation of protected due process rights. By using mandatory language, the regulation necessarily implicates a protected liberty interest worthy of procedural due process protection. The court's decision finds support in at least one other district court in the Third Circuit. In *McLaughlin v. Pernsley*, 693 F. Supp. 318, 321-328 (E.D.Pa. 1988), the United States District Court for the Eastern District of Pennsylvania held that the Philadelphia Department of Human Services violated a foster parent's due process rights by removing a foster child from their home without providing them with the fifteen days advance written notice of the decision to move the child or of their right to appeal that decision, as

required by 55 Pa. Code § 3700.73. The court reasoned that the regulations "use of explicitly mandatory language in connection with requiring specific substantive predicates demands the conclusion that the state has created a protected liberty interest." *Id.* at 326.

This court agrees with the court in *McLaughlin* that the explicit mandatory language of 55 Pa. Code § 3700.73, compels the conclusion that the state created a liberty interest protected by the due process clause of the 14th Amendment.[3] Plaintiffs were entitled to fifteen days advance written notice of the decision to remove their foster children, and notice of the right to appeal that decision. According to Plaintiffs' Amended Complaint, they received only one day's oral notice that the children would be removed from their care. Taking these facts as true, as the court must do in resolving a motion to dismiss, the court concludes that there are sufficient facts in Plaintiffs' amended complaint to raise their claim that they had a protected liberty interest above the speculative level.

Since Plaintiffs have pled sufficient facts showing that they had a liberty interest protected by the Fourteenth Amendment, the court has little difficulty concluding that, at a minimum, Defendants were required to afford them the protections set forth in 55 Pa. Code § 3700.73. While Defendants argue that Plaintiffs have not shown that they were entitled to pre-deprivation notice and an

---

[3]The court recognizes that the *McLaughlin* analysis relies on the mandatory language test of *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), which was limited by *Sandin v. Conner*, 515 U.S. 472, 472-73 (1995). The court nevertheless believes that this analysis is appropriate in this context. The Supreme Court in *Sandin* was concerned with the management of prisons, and the implications of the *Hewitt* analysis in connection with prison regulations. This concern, however, is not applicable here. The Pennsylvania regulation creates a liberty interest for foster parents by requiring notice of, and a right to appeal, the FFCA's decision to relocate a foster child. As stated in *McLaughlin,* without due process protection, this right would be meaningless. *McLaughlin,* 693 F. Supp. at 326.

opportunity to be heard, and that post-deprivation notice would have been sufficient, the court concludes that by providing foster parents with appeal rights in § 3700.73(c), and the opportunity to have the foster children remain in their home pending appeal as provided by § 3700.73(e), the Department of Public Welfare set out procedures providing a process that foster parents can reasonably expect to be followed. That process mandates pre-deprivation notice, and this is the process that should have been followed. Plaintiffs' complaint sets forth sufficient detail about the nature of their procedural due process claim. The court finds that, if the allegations made by Plaintiffs are true, they have a reasonable likelihood of establishing a violation of their procedural due process rights. Accordingly, the court will deny Defendants' motion to dismiss Plaintiffs' procedural due process claim.

## 2. **Substantive Due Process**

The court had already determined that Plaintiffs have set forth sufficient facts demonstrating that they had a liberty interest created by 55 Pa. Code § 3700.73 for purposes of procedural due process; however, "[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392, 400-02 (3d Cir. 2003). To be protected by substantive due process, Plaintiffs must have been deprived of a <u>fundamental</u> liberty interest protected by the Constitution. *See id.*

12

That the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established. *See e.g., Michael H. v. Gerald D.*, 491 U.S. 110 (1989); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977). Whether the due process clause of the Fourteenth Amendment protects the relationship between Plaintiffs and the foster children who were in their care, as well as their continued right to receive placement of foster children is less clear. Certainly, the existence of a family does not always hinge upon biological ties; often the "intimacy of daily association" and the resulting emotional attachments from that association are equally as important as consanguinity. *Smith v. Org. of Foster Families for Equal. and Reform*, 431 U.S. 816, 844 (1977). For instance, no one would say that adoptive families are entitled to any less protection than biological ones.

In this case, however, Plaintiffs ask the court to find that their status as foster parents of two children deserves protection akin to that afforded to permanent family relationships. In *Smith*, *supra*, the Supreme Court, while not definitely deciding the issue, expressed skepticism that these relationships were sufficiently analogous to permanent family relationships such that there was a liberty interest inherent in foster parent/child relationships. *Id.* at 846-847. The Supreme Court stated convincingly that "whatever emotional ties may develop between foster parent and foster child have their origins in an arrangement in which the State has been a partner from the outset." *Id.* at 845. This is in contrast to traditional family relationships whose origins are entirely apart from the power of the State, but are intrinsic to notions of freedom and liberty that are inherent in the very foundation of our country. In the end, the Supreme Court concluded that, at best, there is only a

very limited constitutional liberty in a foster family, and that this liberty arises from a "knowingly assumed relationship with the State," and that state law sets the expectations and entitlements of the parties. *Id.* at 845-46.

In light of the expressed skepticism of the Supreme Court, as well as the inherent temporary nature of a foster parent/child relationship, the court concludes that Plaintiffs' amended complaint, taking all facts as true, has not pled sufficient facts stating a cause of action for a violation of Plaintiffs' substantive due process rights. Morever, the court concludes that amendment of this cause of action would be futile. While it is clear that Pennsylvania has established a regulatory framework vesting foster parents with *some* liberty interest in the continued existence of their relationship with foster children through 55 Pa. Code § 3700.73, and that this interest is sufficient to survive a motion to dismiss Plaintiffs' procedural due process claims, *see supra* Part III.A.1., it does not rise to the level of a fundamental right meriting substantive due process protection. Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' substantive due process claim.

## B. **Qualified Immunity**

Defendants sued in their individual capacities assert that they are entitled to qualified immunity and seek to dismiss Plaintiffs' due process claims. Plaintiffs respond that the rights at issue—the process afforded by 55 Pa. Code § 3700.73—were clearly established at the time Defendants chose to ignore this process, and, therefore, Defendants cannot hide behind the shield of qualified immunity.

14

Even where a government official has violated the constitution, he may be shielded from liability by qualified immunity if the constitutional right was not clearly established at the time of the violation. "Government officials are immune from suit in their individual capacities unless, 'taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right' and 'the right was clearly established at the time of the objectionable conduct.' " *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).) A right is clearly established if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202; *Giles*, 571 F.3d at 325. The Supreme Court recently eliminated the rigid two-step "order of battle" required by *Saucier*, and held that courts may exercise discretion in choosing which prong of the qualified immunity analysis to decide first. *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009).

The court has already concluded that Plaintiffs have pled sufficient facts demonstrating the plausibility of their claim that Defendants violated Plaintiffs' procedural due process rights. Thus, the only issue is whether those constitutional rights were clearly established at the time the alleged violations occurred. The court concludes that the contours of procedural due process rights arising from positive state law sources were sufficiently clear at the time of the events in question such that a reasonable person in the position of Defendants would have understood that disregarding a regulation requiring certain procedures to be followed violated procedural due process.

Defendants argue that Plaintiffs' procedural due process rights were not clearly established because no Middle District court or Pennsylvania state court has held that 55 Pa.Code § 3700.73 creates a constitutionally protected liberty interest. Plaintiffs argue that their rights were clearly established because Defendants were employees of LCCYS and should have known the proper procedures required for removing foster children and closing a foster home. Both arguments miss the point. Defendants reading of the qualified immunity doctrine is too broad. The Supreme Court has never required an official action to be protected by qualified immunity unless the very action in question has previously been held unlawful. *See Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12 (1985) ("We do not intend to suggest that an official is always immune from liability or suit merely because [the specific action in question] has never explicitly been held [unlawful].") On the other hand, Plaintiffs' reading is too narrow. It is immaterial for purposes of qualified immunity whether LCCYS employees should have known that they were violating a state regulation. The material inquiry is whether is was sufficiently clear to a reasonable person in Defendants' position that violating a state regulation meant that they were also violating Plaintiffs' federal due process rights.

Since at least 1974, it has been established that liberty interests may arise from state laws and regulations. In *Wolff v. McDonnell*, the Supreme Court ruled that the state, having created a statutory right to good time credit for prisoners, vests those prisoners with "an interest of real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle [them] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." 418 U.S.

539, 557 (1974).  Here, the Department of Public Welfare created a frame work for appealing a decision to relocate foster children that requires agencies like LCCYS to notify foster parents, pre-removal, of their right to appeal the relocation and permits foster children to remain in the family's care pending appeal.  *See* 55 Pa. Code § 3700.73.  This framework created sufficiently sturdy rights to endow Plaintiffs with a state-created liberty interest for purposes of procedural due process.[4]

In light of the foregoing, the court finds that it is a clearly and sufficiently established legal principal, thereby putting a reasonable person in Defendants' position on notice, that by violating Plaintiffs' state-created rights—in this case those due process protections afforded by 55 Pa. Code 3700.73—Defendants were also violating Plaintiffs' constitutionally required procedural due process rights.  As such, the court finds that Defendants are not entitled to qualified immunity.

## C.  **Equal Protection**

Plaintiffs' amended complaint also asserts a claim against Defendants under the equal protection clause of the Fourteenth Amendment.  That clause states, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  Of course, the equal protection clause "is not a command that all persons be treated alike but, rather, 'a

---

[4]While the court recognizes, like it did in its discussion of *Hewitt* in n. 3, *supra,* that the specific holding of *Wolff* was called into doubt by *Sandin v. Conner*, 515 U.S. 472 (1995), even *Sandin* recognized that under certain circumstances states may create liberty interests which are protected under the Due Process Clause.  *Sandin*, 515 U.S. at 484.  Moreover, the Supreme Court in *Sandin* was concerned that finding a liberty interest in every prison regulation that used mandatory language would overburden federal courts already inundated with prisoner litigation.  This concern is not relevant given the context of this case, as the court is not concerned that its decision will open the flood gates of foster parent litigation.

direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen.* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (emphasis in original).) Here, Plaintiffs argue that they were intentionally treated differently from other similarly situated foster parents and that there was no rational basis for the difference in treatment. Plaintiffs assert that Defendants' actions were motivated by Defendant Holtry's personal animus against Plaintiff Michele Long. Defendants move to dismiss Plaintiffs' equal protection claim, arguing that Plaintiffs failed to allege that Defendants' actions were not rationally related to a legitimate government interest.

Plaintiffs alleged in their amended complaint that Defendants treated them differently than other similarly situated foster parents by not following the appropriate regulations for removing their foster children from their care and in closing Plaintiffs' foster home. Moreover, Plaintiffs argue that Defendants treated them irrationally and arbitrarily by mandating that Plaintiffs meet heightened requirements—without telling them what the requirements were, and without mandating those same requirements to other foster families—prior to reopening Plaintiffs' foster home.

Defendants' concede, for the purposes of this motion, that Plaintiffs have provided the factual support for these allegations. Instead, Defendants argue that the differential treatment was rationally related to a legitimate government interest. In particular, Defendants allege that their actions were motivated by Plaintiffs' repeated abuse allegations against the natural father which interfered with the natural parents' relationship with their children, Plaintiffs' failure to cooperate with the reunification plan, the concerns over the children's health and appearance,

and Michele Long's direction to the schools not to release the children to LCCYS. Notwithstanding Defendants' arguments, Plaintiffs assert that Defendants had no rational basis for removing Plaintiffs' foster children, closing Plaintiffs' foster home, refusing to reopen the foster home, requesting that Plaintiffs meet additional requirements prior to reopening the foster home, and failing to tell Plaintiffs the specifics of those requirements. Plaintiffs further allege that Defendants' actions were intentional and arbitrary due to a personal animus Defendant Holtry has against Plaintiff Michele Long.

The court finds that Plaintiffs have alleged sufficient facts to support the inference that Defendants intentionally treated Plaintiffs differently from other similarly situated foster parents and that there was no rational basis for the difference in treatment. The court makes no findings as to the merits of Plaintiffs' arguments or Defendants proffered rational basis for their decisions. In deciding a motion to dismiss, the court is not here to weigh the evidence; instead, the court must take Plaintiffs' well-pleaded facts as true. Here, Plaintiffs' have pled sufficient facts to state a cause of action for a violation of the Fourteenth Amendment's equal protection clause. Accordingly, the court will deny Defendants' motion to dismiss Plaintiffs' equal protection claim.

### D. *Monell*

Defendants contend that even if Plaintiffs have alleged sufficient facts to state a cause of action against the individual Defendants, they have failed to sufficiently plead that Lebanon County is liable for the conduct of its employees. Pursuant to *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978), a municipality can be liable only for an unconstitutional policy or custom carried out

19

by its employees.  To establish liability under *Monell*, a plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered.  *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984).  A policy is shown "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting, in part*, Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986)). A custom is shown when the practice of "state officials [are] so permanent and well settled as to virtually constitute law.  *Id.* (internal quotations and citations omitted).

Here, Plaintiffs allege that Defendants developed policies and customs exhibiting deliberate indifference to the constitutional right of persons within the geographic and jurisdictional limits of Lebanon County which caused violations of Plaintiffs' constitutional rights.  Specifically, Plaintiffs allege that Defendants developed a policy against Plaintiffs in order to shut down their foster home. Plaintiffs also allege that Defendants failed to adequately supervise and train its supervisors and caseworkers on constitutional limitations on seizures, notice requirements, the appeal process, and the law generally.

The court agrees with Defendants that Plaintiffs' amended complaint asserting a claim against Lebanon County is nothing more than a formulaic recitation of the elements of a *Monell* claim, the very thing the Supreme Court condemned in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)*,* where the court stated that "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (alterations in original)). Moreover, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)(quoting Fed. R. Civ. P. 8(a).) Plaintiffs have failed to allege facts sufficient to support a finding that a decision maker possessing final authority to establish municipal policy issued such a policy that violated Plaintiffs' constitutional rights. Plaintiffs complaint is also devoid of sufficient facts to support their claim that Defendants established a custom so permanent and well settled as to virtually constitute law. Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' claims against Lebanon County and Defendants Holtry, Maulfair, and Southerly in their official capacities.[5]

The court will not permit Plaintiffs an opportunity to amend their complaint as to this claim. The allegations in Plaintiffs amended complaint concerning *Monell* liability are substantially similar to those contained in Plaintiffs' original complaint. (Compare Doc. 1, ¶¶ 63-65 with Doc. 8 ¶¶ 93-96.) Although Plaintiffs added a few generalized factual averments in their amended complaint, the amended complaint is still deficient and only speculates as to Defendant Lebanon

---

[5]The claims against Defendants Holtry, Maulfair, and Southerly in their official capacities will be dismissed because a state official acting in his or her official capacity is not a "person" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against state officers in their official capacity are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159,165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55). Under this standard, the claims against Defendants Holtry, Maulfair, and Southerly in their official capacities are redundant with the *Monell* claim against Lebanon County.

County's liability. Plaintiffs were on notice that they had to be more specific regarding their claim for *Monell* liability when they received Defendants' motion to dismiss their original complaint. (Doc. 7.) However, the amended complaint does little to cure the deficiencies in the original pleading, and to provide Plaintiffs an additional opportunity to amend would be futile.

## E. **Plaintiffs State Law Tort Claims**

In addition to constitutional claims, Plaintiffs' amended complaint asserts claims against Defendants Holtry, Maulfair, and Sutherly in their individual capacities[6] under the Pennsylvania Dragonetti Act, 42 Pa. Cons. Stat. Ann. § 8351, and the tort of abuse of process. Both of these claims arise from Defendants' decision to file a motion for an amended order with the Lebanon County Court of Common Pleas seeking the closure of Plaintiffs' foster home as opposed to following the proper procedure outlined in the Department of Public Welfare's regulations. The court will address each of these in turn.

### 1. **Dragonetti Act**

The Pennsylvania Dragonetti Act states in relevant part**:**

> A person who takes part in the *procurement, initiation or continuation* of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and (2) The proceedings have terminated in favor of the person against whom they are brought.

---

[6]Plaintiffs withdrew their wrongful use of civil proceedings claim and abuse of process claim against Defendant Lebanon County, Defendant James Holtry, Defendant Sue Maulfair, and Defendant Robert Sutherly in their official capacities.

42 Pa. Cons. Stat. Ann. § 8351 (emphasis added). "[A]n action under 42 Pa.C.S. § 8351 cannot be maintained by one who was not a party to the underlying action." *Hart v. O' Malley*, 647 A.2d 542, 548 (Pa. Super. 1994) (*citing Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 193 (Pa. Super. 1993)). However, an exception exists for indispensable parities who should have been joined to the proceeding. *See id.* "[A]n indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights." *Hart,* 647 A.2d at 549 (internal citations omitted).

Defendants argue that since Plaintiffs were not parties to the underlying action in the Lebanon County Court of Common Pleas they cannot maintain a Dragonetti claim. Plaintiffs concede that they were not parties to the underlying juvenile proceeding, nonetheless, Plaintiffs assert that they were indispensable parties to Defendants' motion for an amended order because it affected their rights as foster parents. Plaintiffs further allege that Defendants' motion acted like a counterclaim to the extent that it continued civil proceedings against Plaintiffs. Defendants' argue that the motion was more like a preliminary objection.

The court is not convinced that Plaintiffs were indispensable parties to the proceeding in the court of common pleas. That proceeding dealt with the rights of the foster children and their biological parents not Plaintiffs' rights as foster parents. Plaintiffs rights as foster parents were not so connected with the claims of the parties in the underlying juvenile proceeding that no adjudication could have been made without impairing Plaintiffs' rights. In fact, the court of common pleas apparently acted *ultra vires* when it granted Defendants' request to close Plaintiffs' foster home. (*See* Doc. 8-2 at 24 of 29, Adjudication by Bureau of Hearing and

Appeals.)  The fact that Defendants may have induced the court of common pleas to take action that it did not have the authority to take may be an abuse of process, as the court discusses below, but it does not meet the statutory requirements for a Dragonetti action.  Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' Dragonetti claim.

## 2. Abuse of Process

Plaintiffs also allege an abuse of process claim against Defendants Holtry, Maulfair, and Sutherly in their individual capacities.  Under Pennsylvania law, "abuse of process is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Cruz v. Princeton Ins. Co.,* 972 A.3d 14, 15 n. 1 (Pa. Super. Ct. 2009) (citations omitted).  In order to establish an abuse of process claim, the Plaintiffs must show that (1) the defendant used a legal process against plaintiffs, (2) the action was primarily to accomplish a purpose for which the process was not designed, and (3) harm was caused to the plaintiff.  *Harris v. Brill,* 844 A.2d 567, 572 (Pa. Super. Ct. 2004).  "The word process as used in the tort of abuse of process has been interpreted broadly and encompasses the entire range of procedures incident to the litigation process." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993).  In *Rosen*, the Superior Court of Pennsylvania recognized a distinction between a wrongful use of civil proceedings claim under the Dragonetti Act and an abuse of process claim, specifically, it recognized that abuse of process claims do not require the initiation or commencement of a civil proceeding.  *Id.* at 193 ("The abuse of a subpoena may subject the abuser to liability for abuse of process," but will not subject the abuser to liability for wrongful use of civil proceedings because "a subpoena does not

constitute the initiation or commencement of a civil proceeding." (citations omitted)).

Plaintiffs argue that Defendants use of the motion for amended order as a mechanism to bypass the requirements set out in the Department of Public Welfare's regulations for closing a foster home, was an improper use of the court system. Defendants argue that Plaintiffs cannot maintain an abuse of process claim when the Defendants had a legitimate purpose for filing the motion for amended order. Defendants proffered legitimate purpose was to address concerns regarding the care being rendered by the Plaintiffs to their foster children, and its effect on the children and their relationship with their natural parents. At this stage of the proceedings, the fact that Defendants may well have a defense to Plaintiffs' abuse of process claim is immaterial because the court is only to consider the well-pleaded facts in Plaintiffs' amended complaint. Considering those facts, the court finds that Plaintiffs have pled sufficient information to raise their claim for relief above the speculative level, and Defendants' motion to dismiss Plaintiffs' abuse of process claim will be denied.

### F. Fourth Amendment Claims under the United States Constitution and claims under Pennsylvania's Constitution

Neither of the parties specifically mention Plaintiffs' assertion in their Amended Complaint that their Fourth Amendment rights were violated. It is unclear from Plaintiffs' amended complaint the precise nature of Plaintiffs' Fourth Amendment claim. This case concerns Plaintiffs' allegation that the foster children placed with them in 2006 were taken from their care in 2008 by Defendants without due process, and that Plaintiffs' foster home was closed in violation of Plaintiffs'

due process equal protection rights.  The Fourth Amendment, of course, deals with search and seizure.  It reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.  It is a mystery to the court what Fourth Amendment rights Plaintiffs believe were violated by the actions described in their amended complaint. There are certainly no facts in the amended complaint that would plausibly give rise to a cause of action for an unreasonable search or seizure of Plaintiffs' persons, houses, papers or effects.  Accordingly, the court will *sua sponte* dismiss Plaintiffs' claims under the Fourth Amendment.  If Plaintiffs wish to further amend their complaint to set forth facts plausibly stating a claim for relief under the Fourth Amendment, they may file a motion with this court for leave to do so within fifteen days from the date of the order accompanying this memorandum.  If they fail to seek leave to amend their complaint within this time period, the court will conclude Plaintiffs have abandoned their Fourth Amendment claims.

The same is true for Plaintiffs' claims under Pennsylvania's constitution.  It is unclear from Plaintiffs' amended complaint the exact nature of Plaintiffs' claims under Pennsylvania's constitution.  Certainly, Plaintiffs cannot assert a cause of action pursuant to § 1983 for violations of state law, as that statute is designed to remedy violations of rights protected under federal constitutional law. Since Plaintiffs do not specify the nature of their claims under Pennsylvania's constitution the court will refuse to entertain those claims in this case, and will dismiss those claims *sua sponte*.  Like their Fourth Amendment claims, if Plaintiffs

wish to amend their complaint to further delineate their rights under Pennsylvania's constitution they may file a motion with this court for leave to do so within fifteen days from the date of the order accompanying this memorandum. If they fail to seek leave to amend their complaint within this time period, the court will conclude Plaintiffs have abandoned their state constitutional claims.

**IV.** **Conclusion**

In accordance with the foregoing, the court concludes that Defendants' motion to dismiss should be granted in part and denied in part. Plaintiffs' claims for a violation of procedural due process, equal protection, and their state law tort claim of abuse of process against Defendants Holtry, Maulfair, and Southerly in their individual capacities have facial plausibility allowing the court to draw reasonable inferences that Defendants are liable for the misconduct alleged, and, thus, these claims will be allowed to proceed. However, Plaintiffs' claims for a violation of their substantive due process rights, a violation of Pennsylvania's Dragonetti Act, as well as all of their claims against Lebanon County and the individual Defendants in their official capacities will be dismissed for failure to state a cause of action upon which relief can be granted. The court will not permit Plaintiffs' to amend their complaint to reassert these claims as they have already been afforded an opportunity to do so and have not corrected the deficiencies inherent in the claims. Any further amendment would be futile.

The court will also dismiss *sua sponte* Plaintiffs' claims under the Fourth Amendment of the United States Constitution, and Plaintiffs's claims under Pennsylvania's Constitution because there are no facts supporting either of these

claims.  However, as to those claims, the court will entertain a motion by Plaintiffs to further amend their complaint to specify the precise nature of their alleged Fourth Amendment claims, and their claims under Pennsylvania's Constitution, provided that such a motion is filed within fifteen days from the date of the order attached to this memorandum.  If no such motion is filed, the court will deem Plaintiffs to have abandoned these claims.  The court will issue an order consistent with this memorandum.

s/Sylvia H. Rambo
United States District Judge

Dated:  November 24, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILIP and MICHELE LONG,  :  No. 1:09-CV-602
                  :
     **Plaintiffs**  :  **JUDGE SYLVIA H. RAMBO**
  **v.**           :
                  :
**JAMES HOLTRY, individually**  :
**and in his official capacity, SUE**  :
**MAULFAIR, individually and in**  :
**her official capacity, ROBERT**  :
**SUTHERLY, individually and**  :
**in his official capacity, LEBANON**  :
**COUNTY,**           :
                  :
     **Defendants**  :

## O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss Plaintiffs' amended complaint, (Doc. 10), is **GRANTED IN PART and DENIED IN PART** as follows:

(1) Defendants' motion is **GRANTED** as to Plaintiffs' claims for a violation of their substantive due process rights, a violation of Pennsylvania's Dragonetti Act, as well as <u>all</u> claims against Lebanon County and the individual Defendants in their official capacities. These claims are dismissed against these parties.

(2) Defendants' motion is **DENIED** in all other respects.

It is **FURTHER ORDERED THAT** Plaintiffs' claims under the Fourth Amendment of the United States Constitution and Plaintiffs' claims under Pennsylvania's constitution are dismissed *sua sponte* because Plaintiffs have failed to plead sufficient facts supporting either of these claims. However, as to these claims, the court will entertain a motion by Plaintiffs to further amend their complaint. If Plaintiffs wish to assert these claims they must file a motion to amend

their complaint within fifteen days from the date of this order, and they must specify in their motion the precise nature of their alleged Fourth Amendment claims, and their claims under Pennsylvania's Constitution. Furthermore, Plaintiffs must attach a proposed second amended complaint fully setting forth the nature of their claims under the Fourth Amendment and Pennsylvania Constitution. If no such motion is filed, the court will deem Plaintiffs to have abandoned these claims.

s/Sylvia H. Rambo
United States District Judge

Dated: November 24, 2009.